**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Carve Design LLC,

      Plaintiff,

v.

Slingshop LLC,

      Defendant.

No. CV-25-03521-PHX-DWL

**ORDER**

Carve Design LLC ("Plaintiff") holds trademarks related to its key-shaped multifunctional tool "Geekey." In this action, Plaintiff asserts various claims against SlingShop LLC ("Defendant") under the Trademark Act of 1946 (the "Lanham Act") and related state-law claims. Now pending before the Court is Defendant's motion to dismiss. (Doc. 11.) For the reasons that follow, the motion is granted in part and denied in part, and Plaintiff is granted leave to amend.

## BACKGROUND

I.　Factual Allegations

The following facts, presumed true, are derived from the complaint. (Doc. 1.)

A.　**The Registered Trademarks**

Plaintiff "is the creator and owner of the Geekey® multi-tool, a pocket-sized, key-shaped multi-function hand tool that integrates numerous practical tools into a single device that can be conveniently caried on a key chain." (*Id.* ¶ 10.) "Since at least as early as November 20, 2017, Plaintiff has continuously used the Geekey® mark and distinctive

three-dimensional product configuration in commerce in connection with its multi-tool products." (*Id.* ¶ 11.)

Plaintiff "owns U.S. Trademark Registration No. 7,097,395, issued July 4, 2023, for the three-dimensional configuration comprising a key shape with the 'GEEKEY' mark in a stylized font on the key bow, with a hexagon design surrounding the letter 'G' and the first letter 'E', and measurement indicators on the key blade.  This registration specifically includes the key-shaped configuration of the Geekey® multi-tool with certain features indicated as functional under Section 2(f) of the Trademark Act." (*Id.* ¶ 12.)[1]

Plaintiff "also owns U.S. Trademark Registration No. 7,238,893, issued December 12, 2023, for the three-dimensional configuration comprising a multi-function hand tool shaped like a key, with a rounded and elongated hexagon-shaped top and a narrow bottom ending in a tip, along with various distinctive design elements indicated in the registration." (*Id.* ¶ 13.)[2]

### B.    The Unregistered Trade Dress

In addition to Plaintiff's registered marks, the complaint alleges that "[t]he distinctive appearance and overall design of the Geekey® multi-tool (the 'Geekey Trade Dress') is unique, instantly recognizable, and serves to identify Plaintiff as the source of the product." (*Id.* ¶ 16.)  Specifically, the complaint alleges that "[t]he Geekey Trade Dress consists of the unique combination and arrangement" of the following seven non-functional, distinctive elements:

a.    A key-shaped, pocket-sized form factor with a rounded and elongated hexagon-shaped top (key bow) and a narrow bottom ending in a tip;

b.    Construction from glassed bead blasted stainless steel with a distinctive finish;

c.    A specific arrangement of multiple tools within the physical constraints of the key shape, including the placement of a bottle

[1]    This order will refer to registered trademarks by the last three digits of their trademark registration number—*e.g.*, the '395 Trademark.

[2]    The complaint further alleges that Plaintiff owns "U.S. Trademark Registration No. 5,661,148" (Doc. 1 ¶ 14), but neither party further discusses that mark in their briefing (*see generally* Docs. 11, 13-1, 17).

opener, scoring tip, wrench heads, screwdriver, ruler, and serrated edge;

d.    A diamond shaped hole with one rounded inner corner at the head for keychain use;

e.    The specific configuration of tool elements and design features in a compact, flat unit;

f.    Distinctive packaging with black cards and minimalist typography; and

g.    The overall visual impression created by the combination of these elements.

(*Id.* ¶ 17.)   The complaint further alleges that the listed elements "of the Geekey Trade Dress are not essential to the use or purpose of the product and do not affect the cost or quality of the product."  (*Id.* ¶ 18.)

"Since its introduction, the Geekey® multi-tool has achieved significant commercial success and recognition among consumers.  Plaintiff has invested substantial resources in developing, promoting, and marketing the Geekey® multi-tool throughout the United States."  (*Id.* ¶ 19.)

"[A]s a result of Plaintiff's extensive sales and advertising of the Geekey® multi-tool, in the minds of consumers, the distinctive trade dress of the product has come to symbolize the source and quality of the Carve Design brand."  (*Id.* ¶ 20.)  The complaint alleges that the Geekey Trade Dress "has acquired secondary meaning" by virtue of the following: "a. Consumer Perception"; "b. Substantial Advertising"; "c. Substantial Use of the Trade Dress"; "d. Exclusivity"; "e. Copying"; and "f. Actual Confusion."  (*Id.*)

C.    **The GiddyUp Relationship**

On or around September 24, 2020, Plaintiff entered into a fulfillment agreement "with GiddyUp Fulfillment LLC ('GiddyUp') to provide advertising services, including developing a website with a unique brand to obtain customers through a marketing funnel."  (*Id.* ¶ 22.)  "GiddyUp created Plaintiff's unique brand based on an intake questionnaire that asked about 1) internet presence including links that feature the Geekey® product; 2) Top benefits and selling selling [sic] features 3) Customer's frequently asked questions and 4)

the founder's story." (*Id.* ¶ 23.)

### D. **Defendant's Product**

The complaint alleges that Defendant "has knowingly and intentionally copied Plaintiff's registered trademarks, trade dress, product photographs, packaging call-outs (feature descriptions) and advertising by manufacturing and selling a 'Keyzmo' product that creates a likelihood of confusion among consumers as to the origin of the goods, and has caused actual confusion in the marketplace ('the Counterfeit Goods')." (*Id.* ¶ 3.)

Specifically, in 2021, Plaintiff "discovered that Defendant was offering for sale online the Counterfeit Goods that, without authorization, contains the Geekey Trade Dress." (*Id.* ¶ 25.) The complaint alleges that "[t]he Geekey Trade Dress was copied in three parts 1) the Geekey® product was copied exactly; 2) the Keyzmo website made by GiddyUp copied features from the Geekey website to confuse the public into thinking that Keyzmo and Geekey products are the same based on Plaintiff's intake questionnaire; [and] 3) the product packaging has identical color, similar wording, and similar product placement further confusing the public." (*Id.* ¶ 26.)

The complaint attaches the following images that show "the items without product packaging":

 

(*Id.* ¶ 28.) The complaint alleges that a "[s]ide-by-side comparison of the products" reveals the following:

a.    Both products feature a central hexagonal head (key bow) that is generally the same size and shape;

b.    Both products include a blade portion extending from the hexagonal

head with identical proportions;

c.     Both products have a diamond shaped hole with one rounded inner corner for keychain attachment positioned in the identical location on the hexagonal head;

d.     Both products feature measurement markings along the blade in an identical arrangement;

e.     Both products position a bottle opener feature in the identical location on the key bow;

f.     Both products have a screwdriver tip at the end of the blade positioned identically; [ ]

g.     Both products are constructed from glassed bead blasted stainless steel with an identical finish and overall visual appearance; [and]

h.     [Both products are] the exact same size in all outer dimensional measurements for length, width and height.

(*Id.* ¶ 29.)

The complaint also attaches the following image of the "product packaging":



(*Id.* ¶ 30.)  The complaint alleges that the Geekey product has "a black background with text explaining 'Wire Stripper' 'Protractor' 'File' 'Scoring Tip / Can Opener' 'Serrated edge' 'Wire Bender'" and that "[t]he Counterfeit Goods have copied this identically." (*Id.*)

E.    **Defendant's Advertising**

On or about October 22, 2022, Defendant "posted an advertisement with a link on ESPN.com encouraging internet users to purchase the 'Keyzmo' product, but the image

shown is actually one of Plaintiff's product." (*Id.* ¶ 33.)[3] Additionally, the complaint alleges that "[e]ven GiddyUp cannot tell the difference between the products, putting a photograph of Plaintiff's founder with a Geekey® product with branding blurred out in Defendant's advertising copy." (*Id.* ¶ 26.) The complaint further alleges that "the Counterfeit Goods could only have been acquired by Defendant actively purchasing a Geekey® product and directly copying the Geekey Trade Dress from Plaintiff's products." (*Id.* ¶ 27.)

Additionally, "Defendant has used GiddyUp to . . . substantially copy significant portions of Plaintiff's website to further confuse customers. With identical products offered at identical prices (to the penny) . . . ." (*Id.* ¶ 36.)

F.    **Consumer Confusion**

The complaint alleges the following "instances of actual confusion between the Geekey® multi-tool and Defendant's Counterfeit Goods":

> On December 20, 2021, Customer A contacted Plaintiff regarding an order for Defendant's Counterfeit Goods with order confirmation number "GU12802-KEYZMO," seeking information about shipping status. The customer mistakenly believed she had purchased the product from Plaintiff when in fact she had purchased from Defendant;
>
> On November 14, 2022, Plaintiff received correspondence from Customer B noting that consumers were confused by blog posts and advertisements featuring Plaintiff's Geekey® product images but linking to purchase pages for Defendant's Counterfeit Goods;
>
> On September 21, 2023, a customer service request from Company C was erroneously sent to Plaintiff regarding pricing and promotional offers for the Counterfeit Goods, demonstrating that third-party vendors were also confused about the source of the products;
>
> On December 1, 2021, a potential Customer D . . . contacted Plaintiff after noticing the striking similarity between the Geekey® product and the Counterfeit Goods, specifically asking which was the original product.

(*Id.* ¶¶ 40-44.)

---

[3] Defendant disputes this allegation as inconsistent with other portions of the complaint. (Doc. 11 at 4, 17-18.) The Court addresses this dispute below.

Additionally, "Plaintiff has received multiple inquiries from consumers who viewed advertisements for the Counterfeit Goods but then contacted Plaintiff believing they were the source of the product they had seen advertised.  Plaintiff has also received physical returns of the Keyzmo product as consumers believed they were returning to Plaintiff as the seller." (*Id.* ¶ 45.)

G.    **Notice**

On or about February 11, 2024, Plaintiff "placed a phone call to Defendant, notifying Defendant of Plaintiff's intellectual property rights and demanding that Defendant cease its infringing activities." (*Id.* ¶ 34.)  The complaint alleges that "[d]espite having knowledge of Plaintiff's rights, Defendant has continued to market and sell the infringing Keyzmo product." (*Id.* ¶ 35.)

II.    Procedural History

On September 25, 2025, Plaintiff filed the complaint, which asserts five causes of action. (Doc. 1.)  Count One is a claim for "Federal Trademark/Trade Dress Infringement Under 15 U.S.C. § 1114." (*Id.* at 13.)  Count Two is a claim for "Federal Trade Dress Infringement and Unfair Competition Under 15 U.S.C. § 1125(a)." (*Id.* at 14.)  Count Three is a claim for "Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)." (*Id.* at 15.)  Count Four is a claim for "Common Law Trademark and Trade Dress Infringement." (*Id.* at 16.)  Count Five is a claim for "Common Law Unfair Competition." (*Id.* at 1, 16.)[4]

On November 11, 2025, Defendant filed the pending motion to dismiss. (Doc. 11.)  That motion is now fully briefed. (Docs. 13-1, 17.)  Neither side requested oral argument.

…

…

…

…

---

[4]    The text under the heading "Fifth Claim For Relief" states that Count Five is a claim for "Common Law Trademark and Trade Dress Infringement" (Doc. 1 at 16), which is the same verbiage used to described Count Four.  However, based on the cover page of the complaint and the allegations within Count Five, it is clear that Count Five was intended to be a common law claim for unfair competition.

**DISCUSSION**

I.     Legal Standard

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted).  However, the court need not accept legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678-80.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.     Judicial Notice

Defendant seeks judicial notice of two exhibits attached to its motion.  (Doc. 11 at 3 n.2.)  Defendant describes Exhibit 1 as the '395 Trademark Prosecution History from the United States Patent and Trademark Office ("PTO") ("the '395 Prosecution History") and Exhibit 2 as the '893 Trademark Prosecution History from the PTO ("the '893 Prosecution History").  (Doc. 11-1 at 1.)  Defendant also seeks judicial notice of "public online postings" available on the "Geekey.com" website.  (Doc. 11 at 10 n.5.)  In its response, Plaintiff does not object to either request or dispute the authenticity of Defendant's exhibits.  (*See generally* Doc. 13-1.)

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, a court

may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "This includes public records like court filings and PTO records." *VetStem, Inc. v. Regen Labs LLC*, 2024 WL 4003904, *2 (C.D. Cal. 2024). *See also Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1049 (N.D. Cal. 2024) ("Courts may . . . take judicial notice of documents issued by the PTO . . . ."). Both the '395 Prosecution History and the '893 Prosecution history are public records and Plaintiff does not dispute the authenticity or accuracy of these documents. Accordingly, the Court grants Defendant's request as to those two exhibits attached to its motion,[5] with the clarification that it may not take judicial notice of any disputed facts contained within those exhibits. *See, e.g.*, *Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 999 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

As for the online postings available on the Geekey.com website, those postings are irrelevant to the motion-to-dismiss analysis (for reasons discussed below) so the Court declines to take judicial notice of them. Further, to the extent Defendant is seeking judicial notice of miscellaneous screenshots of the Geekey Amazon page (Doc. 11 at 9-11), even assuming those miscellaneous screenshots are accurate and reliable, *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) (holding that it is inappropriate for a court to take judicial notice of facts on a webpage whose source and reliability are unknown), they are also irrelevant to the motion-to-dismiss analysis.

…

---

[5]    Defendant's reply brief also attaches, as exhibits, what purport to be two PTO registration documents. (Doc. 17-1 at 1.) Defendant, however, does not request judicial notice of them. (*See generally* Doc. 17.) Even if Defendant had made such a request, a "request for the Court to take judicial notice of the [exhibits], presented for the first time in its reply brief, is inappropriate." *Hsu v. Puma Biotechnology*, Inc., 213 F. Supp. 3d 1275, 1284 (C.D. Cal. 2016).

III.    Federal Trademark Infringement (Count One)

Count One is a claim for federal trademark infringement under 15 U.S.C. § 1114. (Doc. 1 at 13.)[6]  Specifically, the complaint asserts infringement of the '395 Trademark and the '893 Trademark.  (*Id.* ¶¶ 47-49.)

A.    **The Parties' Arguments**

Defendant argues that "[t]rademarks and trade dress receive similar protections under the Lanham Act" and that "under no circumstances[] may trademarks or trade dress protect what is functional."  (Doc. 11 at 4.)  Defendant contends that although "[Plaintiff] first claims trademark rights in the 'three-dimensional configuration of the Geekey® multi-tool,'" Plaintiff has "disclaimed nearly all of the 'three-dimensional configuration' of the tool" as functional.  (*Id.* at 7.)  Defendant cites the '395 Prosecution History and the '893 Prosecution History to support its argument that "in obtaining those registrations, [Plaintiff] disclaimed nearly everything as functional" and that "what is left of [Plaintiff]'s claimed marks" is "the incomplete outer shape of a key-shaped multi-tool."  (*Id.* at 1-2.)  And Defendant argues that "even what is left of [Plaintiff]'s trademark claim in the overall appearance of a multi-tool is inescapably functional."  (*Id.* at 7-8.)

In response, Plaintiff argues that "[f]or registered trademark claims, Plaintiff must plead only two elements: (1) ownership of a valid registration, and (2) likelihood of confusion."  (Doc. 13-1 at 7.)  Plaintiff also argues that "[n]onfunctionality is not an element that the plaintiff must plead or prove for registered trade dress—it is part of defendant's burden to rebut the presumption of validity."  (*Id.*)  As for ownership of a valid registration, Plaintiff argues that "[t]he [c]omplaint adequately alleges ownership of registered marks which are 'prima facie evidence of the validity of the registered mark and of the registration of the mark.'"  (*Id.* at 8, citation omitted.)  As for likelihood of confusion, Plaintiff argues that "[t]he [c]omplaint adequately alleges likelihood of confusion with

---

[6]    Although Count One is titled "Federal Trademark/Trade Dress Infringement" (Doc. 1 at 13), Plaintiff's response brief makes clear that Count One "is based on its registered marks" and Count Two is based on "unregistered trade dress infringement."  (Doc. 13-1 at 9.)

numerous examples." (*Id.*) Plaintiff adds that "'[a] plaintiff is not required to prove the likelihood of confusion at the pleading stage.'" (*Id.*, citation omitted.) Plaintiff concludes: "Because [Count One] is based on its registered marks, Plaintiff need not plead nonfunctionality—the registration establishes the presumption, and the burden shifts to Defendant to prove functionality as a defense." (*Id.* at 9.)

In reply, Defendant argues that "[Plaintiff] fails to plausibly allege infringement of the ['395 Trademark] because it fails to allege [Defendant] used the GEEKEY mark." (Doc. 17 at 2.) Specifically, Defendant argues that "the copying of functional elements of a competitor's design is not a violation of the Lanham Act" and that "[b]ecause the ['395 Trademark] prominently features the GEEKEY logo, any allegation of infringement or counterfeiting that does not include the logo is fundamentally deficient." (*Id.* at 3.) Defendant further argues that "[Plaintiff] also fails to allege confusion based on its actual '395 Registration." (*Id.*) Defendant next argues that "[Plaintiff] ignores what the [PTO] actually registered: the GEEKEY logo 'shown in a stylized font on the key.' The ['395 Trademark] disclaims everything else.'" (*Id.* at 3-4, citation omitted.) Defendant further argues that the complaint does not contain "any allegation that consumers are confused by anything other than the functional elements disclaimed by [Plaintiff]" and that Plaintiff "cannot use any of these functional elements to support its infringement claim." (*Id.* at 4.) Similarly, Defendant argues that "[Plaintiff] fails to plausibly allege infringement of the ['893 Trademark] because it fails to allege a likelihood of confusion based on the non-functional elements on the back of the Geekey product." (*Id.*) Defendant contends that "nearly everything in the ['893 Trademark] has already been disclaimed as functional" and that "[w]hat remains [as non-functional] is a key-shaped object." (*Id.* at 5.) Defendant also argues that "[e]xcept for a handful of conclusory statements, [Plaintiff] does not allege that consumers are confused by the partial outline shape of the ['893 Trademark]." (*Id.*) Finally, Defendant argues that "[Plaintiff] fails to compare the ['893 Trademark] to [Defendant]'s product or to allege confusion based on the registration. Thus, [Plaintiff] fails to plausibly allege infringement of the ['893 Trademark]." (*Id.* at 5-6.)

B.    **Analysis**

"[A] claim for trademark infringement requires only two elements: (1) ownership of a trademark, and (2) that the plaintiff show a likelihood of confusion through the balancing of eight factors." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014).

Beginning with the first element, "federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).  It is undisputed that Plaintiff holds federally registered marks for the '395 Trademark and the '893 Trademark. (Doc. 17 at 2-3.)  Nevertheless, in relation to the '395 Trademark, Defendant emphasizes that Plaintiff disclaimed nearly all of the features of the Geekey tool as functional and argues that Plaintiff cannot use those functional elements to support its infringement claim.  (*Id.* at 3-4.)

Defendant is correct that "a disclaimer shows that the applicant enjoys no exclusive rights to the disclaimed portion of the mark . . . ." *Metamorfoza D.O.O. v. Big Funny, LLC*, 2021 WL 4572039, *4 (C.D. Cal. 2021) (cleaned up).  Here, the disclaimed functional features of the '395 Trademark have been indicated by Plaintiff using dotted lines:



(Doc. 11-1 at 17, 19 ['395 Prosecution History].)  Thus, were the complaint to "allege a claim for trademark infringement . . . based solely on the use of the disclaimed component[s] of" the '395 Trademark, it would fail to state a claim for trademark

infringement under the Lanham Act. *Metamorfoza D.O.O.*, 2021 WL 4572039 at *5. *See also Off. Airline Guides, Inc. v. Goss*, 856 F.2d 85, 87 (9th Cir. 1988) ("OAG alleges that Ashbyweb has used only the disclaimed words, not the mark as a whole. The district court therefore did not err in finding that OAG had not demonstrated a serious question concerning the alleged infringement of its registered mark.").

But the complaint does not allege infringement based solely on Defendant's use of the disclaimed components of the '395 Trademark. Rather, the complaint alleges that Defendant's Keyzmo product infringed protectable, non-disclaimed portions of the '395 Trademark—specifically, "a central hexagonal head (key bow) that is generally the same size and shape." (Doc. 1 ¶ 29(a).) Because the complaint alleges that Defendant's product infringes at least some valid protectable portions of the '395 Trademark, Plaintiff has done enough at this stage of the case to plausibly allege the first element of trademark infringement under the Lanham Act. *Cf. Balance Studio, Inc. v. Cybernet Ent., LLC*, 2016 WL 1559745, *4-5 (N.D. Cal. 2016) (holding that "Plaintiff . . . adequately pleaded its cause of action for trademark infringement" where "Plaintiff [did] not allege that Defendant . . . committed trademark infringement based solely on Defendant's use of a disclaimed component of Plaintiff's mark"). *See also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) ("To establish a trademark infringement claim under section 32 of the Lanham Act . . . Brookfield must establish that West Coast is using a mark confusingly similar to a valid, protectable trademark of Brookfield's.").

*Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556 (Fed. Cir. 1994), does not compel a different conclusion. Defendant cites *Conopco* as "discussing the importance of party logos in evaluating trade dress infringement." (Doc. 17 at 3.) But *Conopco* addressed the importance of party logos in the likelihood-of-confusion context. That inquiry is distinct from the issue being addressed here—whether the complaint sufficiently alleges ownership of a valid mark. At any rate, *Conopco* does not, as Defendant appears to suggest, hold that a party may avoid liability for infringement under the Lanham Act by merely

omitting the protected mark's logo. *Cf. Nautilus, Inc. v. Hempel*, 2013 WL 12133877, *2 (C.D. Cal. 2013) (finding that although the complaint did not "clearly allege an infringement of the Nautilus [word] mark," "[i]nfringement of the Dumbbell Configuration mark is established separately by reference to the photographic representations of Defendant's products, which indicate that the shape of the dumbbells matches that of the image mark").

Turning to likelihood of confusion, the "inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). "The eight-factor *Sleekcraft* test is used in the Ninth Circuit to analyze the likelihood of confusion question in all trademark infringement cases, both competitive and non-competitive. The eight factors are as follows: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997) (citation omitted).

Neither party's briefing expressly addresses the *Sleekcraft* factors. Nevertheless, "[t]he Court notes that it has found no authority . . . holding that a plaintiff bringing a trademark or trade dress claim must explicitly plead facts going to each of the *Sleekcraft* factors." *Ferrero S.p.A v. Imex Leader, Inc.*, 2018 WL 11346538, *8 (C.D. Cal. 2018). To the contrary, "[a] plaintiff is not required to prove the likelihood of confusion at the pleading stage. Instead, the likelihood of confusion is a fact-specific inquiry best left for decision after discovery." *Mastro's Restaurants LLC v. Dominick Grp. LLC*, 2012 WL 2091535, *5 (D. Ariz. 2012) (cleaned up). *See also Rearden LLC*, 683 F.3d at 1210 ("[L]ikelihood of confusion is often a fact-intensive inquiry."); *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 954 (D. Ariz. 2020)

("[B]ecause likelihood of confusion is an intensely factual question, consisting of all of the factual elements identified above, the court declines to dismiss at this time.") (internal quotation marks and citation omitted).

Defendant contends that the complaint fails to allege a likelihood of confusion arising from anything other than the functional elements of the Geekey disclaimed by Plaintiff. As an initial matter, Defendant fails to cite any case law to support the proposition that likelihood of confusion must be based exclusively on non-disclaimed material. "The Ninth Circuit does not ignore disclaimed terms when considering whether a likelihood of confusion exists." *Advanced Hair Restoration LLC v. Bosely Inc.*, 2023 WL 9024196, *3 (W.D. Wash. 2023) (citing *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 722 n.1 (9th Cir. 1958)). In any event, the complaint alleges several instances of actual confusion by customers—a *Sleekcraft* factor—none of which appear exclusively limited to the functional elements of the '395 Trademark or the '893 Trademark. (Doc. 1 ¶¶ 41-45.) The complaint also alleges that Plaintiff's goods and Defendant's goods are competitive and that Defendant's "product was copied exactly." (Doc. 1 ¶ 26.)

As the Ninth Circuit explained in *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858 (9th Cir. 1996), a district court may decide whether a likelihood of confusion exists on the face of the pleadings and dismiss a complaint "[if] the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely." *Id.* at 860. Nevertheless, given the complaint's allegations of actual confusion by customers between Plaintiff's Geekey product and Defendant's Keyzmo product, in addition to the highly factual nature of the likelihood-of-confusion analysis, Plaintiff has done enough at this stage of the case to allege a likelihood of confusion. "At an appropriate time, [Defendant] might well prove that consumer confusion was unlikely. But on a motion under Rule 12(b)(6) the inquiry is into the sufficiency of the pleading, not of the evidence." *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004). Accordingly, Defendant's motion to dismiss Count One is denied.

…

IV.    Federal Trade Dress Infringement And Unfair Competition (Count Two)

Count Two is a claim for federal trade dress infringement and unfair competition under 15 U.S.C. § 1125(a). Plaintiff's response brief clarifies that it is seeking relief pursuant to "two distinct theories under Section 43(a) of the Lanham Act: (1) unregistered trade dress infringement and (2) false designation of origin based on 'palming off.'" (Doc. 13-1 at 9-10.)

A.    **Federal Trade Dress Infringement**

1.    The Parties' Arguments

Defendant argues that "the Lanham Act requires that a plaintiff plead and prove that the alleged trade dress is 'non-functional.'" (Doc. 11 at 5, citation omitted.) Defendant contends that Plaintiff "must allege more than the naked conclusion that the alleged trade dress is non-functional" and that, under *Deckers Outdoor Corp v. Fortune Dynamic Inc.*, 2015 WL 12731929 (C.D. Cal 2015), Plaintiff "is required 'to allege *how* a trade dress is non-functional.'" (*Id.*) Defendant next argues that "each of the purported trade dress elements of the 'Geekey Trade Dress' identified in the complaint is functional." (*Id.* at 8-14.) Finally, Defendant cites *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009 (9th Cir. 1999), and argues that "[t]he Ninth Circuit has considered similar multi-tool designs and determined that such designs are not protectable by trade dress." (*Id.* at 14-15.)

In response, Plaintiff argues that to state a claim for unregistered trade dress infringement it "must show three elements: (1) distinctiveness (either inherent or acquired through secondary meaning); (2) likelihood of confusion; and (3) nonfunctionality." (Doc. 13-1 at 10.) As for distinctiveness, Plaintiff argues that "the [c]omplaint specifically identifies the seven elements comprising the Geekey Trade Dress" and alleges that the Geekey Trade Dress has acquired secondary meaning through Plaintiff's "'extensive commercial efforts' including 'significant advertising, promotions, and sales.'" (*Id.*, citation omitted.) As for likelihood of confusion, Plaintiff argues that the complaint "provides detailed side-by-side comparison[s] of the products" and "further documents

multiple instances of actual consumer confusion." (*Id.*)  Finally, as for nonfunctionality, Plaintiff notes that the complaint alleges "that the elements of the Geekey Trade Dress are 'non-functional, distinctive elements' that are 'not essential to the use or purpose of the product and do not affect the cost or quality of the product.'" (*Id.* at 11, citation omitted.) Plaintiff also argues that "[f]unctionality is a fact-intensive inquiry inappropriate for resolution at the motion to dismiss stage." (*Id.*)

In reply, Defendant, citing *Deckers*, reiterates that "[Plaintiff] must make more than conclusory statements; it is required 'to allege *how* a trade dress is non-functional.'" (Doc. 17 at 6.)  Defendant also argues that "it is highly relevant—*if not dispositive*—that [Plaintiff] disclaimed nearly all of these elements as functional as part of the '395 [Trademark] and [the] '893 [Trademark]." (*Id.* at 7.)

2.    Analysis

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (citation omitted).  To succeed on a trade dress infringement claim, "which is analytically similar to an unregistered trademark claim," *Brian Lichtenberg, LLC v. Alex & Chloe, Inc.*, 2014 WL 585436, *4 (C.D. Cal. 2014), Plaintiff "must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc.*, 251 F.3d at 1258 (footnote omitted).  Because Defendant's motion focuses on Plaintiff's alleged failure to plead nonfunctionality, and because that element is dispositive, the Court begins its analysis there.

"Trade dress protection extends only to design features that are nonfunctional." *Id.* "Section 43(a)(3) of the Lanham Act . . . requires a plaintiff asserting a claim for infringement of an unregistered trade dress to meet the burden of proving that the asserted trade dress is not functional." *Morton & Bassett, LLC v. Organic Spices, Inc.*, 2016 WL

4608213, \*5 (N.D. Cal. 2016). *See also* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.").

The parties agree that it is Plaintiff's burden to plead nonfunctionality as to Count Two[7] but disagree over whether the complaint sufficiently pleads it. The Court agrees with Defendant that the complaint's allegations on this point are deficient. To be sure, the complaint *asserts* that the Geekey Trade Dress is nonfunctional. (Doc. 1 ¶ 17 ["The Geekey Trade Dress consists of the unique combination and arrangement of the following non-functional, distinctive elements."]; *id.* ¶ 18 ["The non-functional design elements of the Geekey Trade Dress are not essential to the use or purpose of the product and do not affect the cost or quality of the product."].) But Plaintiff must do more than provide conclusory allegations on this point. *See, e.g.*, *Subversive Tools, Inc. v. Bootstrap Farmer, LLC*, 2024 WL 4044080, \*3 (S.D.N.Y. 2024) ("Conclusory allegations of non-functionality are simply insufficient to satisfy the *Iqbal* and *Twombly* standard.") (citation omitted); *Saber Interactive Inc. v. Oovee, LTD.*, 2022 WL 5247190, \*8 (W.D. Wash. 2022) ("Because Saber cannot rely on 'conclusory statements,' and instead must plead with at least some detail as to functionality, it has not satisfied Rule 12(b)(6) on this issue."); *Virgin Scent, Inc. v. Bel Air Natruals Care Corp.*, 2018 WL 5264145, \*5 (C.D. Cal. 2018) ("[B]ecause Plaintiff fails to support its conclusory allegation of non-functionality, the Court GRANTS Defendants' Motion."); *Deckers Outdoor Corp.*, 2015 WL 12731929 at \*5 ("Because Plaintiff does not support its conclusory allegation that the Bailey Button Boot Trade Dress is non-functional in the complaint, the Court GRANTS the motion to dismiss the trade dress claims . . . ."); *Glassbaby, LLC v. Provide Gifts, Inc.,* 2011 WL 2218583, \*2 (W.D. Wash. 2011) ("Plaintiff must plead with at least some detail what the purported design is and how it is nonfunctional.").

---

[7] In contrast, and as discussed above, Plaintiff does not have the burden of pleading nonfunctionality in relation to Count One.

- 18 -

Plaintiff attempts to avoid dismissal by arguing that "[f]unctionality is a fact-intensive inquiry inappropriate for resolution at the motion to dismiss stage." (Doc. 13-1 at 11.)  This argument misses the mark—the "case law does not relieve Plaintiff of its obligation to adequately *plead* non-functionality in order to state a claim for trade dress infringement," *Deckers Outdoor Corp.*, 2015 WL 12731929 at *5.  *See also Subversive Tools*, 2024 WL 4044080 at *3 ("Functionality is a question of fact that makes dismissal at the pleading stage inappropriate.  Nonetheless, even at the motion to dismiss stage, a plaintiff must specifically allege non-functionality.") (cleaned up).  Accordingly, Defendant's motion to dismiss Count Two is granted to the extent Count Two is premised on a trade dress infringement theory.

B.      **Unfair Competition**

1.       The Parties' Arguments

Defendant argues that although the complaint alleges "'GiddyUp copied' features from GiddyUp's Geekey website," "[Defendant] is only responsible for its own advertising actions, not for the actions of third parties." (Doc. 11 at 16.)  Defendant also argues that although the complaint alleges that it "posted an advertisement with a link on ESPN.com encouraging internet users to purchase the 'Keyzmo' product," "the graphic [Plaintiff] show[s] [in the complaint]—*gifts.2022gadgets.com*—is apparently a gift recommendation website" and "there is no suggestion or argument that [Defendant] either created or was aware of the website . . . or that [Defendant] was even aware of this advertising." (*Id.*)  Defendant emphasizes that the screenshot in the complaint "plainly shows an affiliation with a product recommendation website." (*Id.* at 16-17.)  Defendant argues that "[t]he Court need not consider such contradictory allegations." (*Id.* at 17.)

In response, Plaintiff argues that "[t]he [c]omplaint . . . adequately alleges a separate and independent claim for false designation of origin." (Doc. 13-1 at 11.)  Plaintiff argues that the complaint's two allegations on this point—first, that Defendant posted a Keyzmo advertisement on ESPN.com with an image of Plaintiff's product; and second, that GiddyUp placed a photograph of Plaintiff's founder with a Geekey product in Defendant's

advertisement—are both "textbook passing off." (*Id.* at 12.)  Plaintiff further argues that although "Defendant argues that the allegations regarding third-party advertising on GiddyUp and ESPN.com cannot be attributed to Defendant," "[a]t this stage, the Court must accept these allegations as true and draw all reasonable inferences in Plaintiff's favor." (*Id.* at 12-13.)

In reply, Defendant argues that "[Plaintiff]'s cause of action for 'passing off' should be dismissed because it is not only demonstrably false, based on the evidence cited in the [c]omplaint, but because [Plaintiff] doubles-down on those false statements in its [response]." (Doc. 17 at 8.)  Defendant asserts that "[t]he screenshots are from third-party websites and [Plaintiff]'s allegation that [Defendant] created or posted such advertisements are contradicted by the very allegations of its [c]omplaint." (*Id.*)  Defendant points to the "screenshot included *in the [c]omplaint itself*," which "is labeled as originating from a third-party's advertising website (gifts.2022gadgets.com), not from [Defendant]." (*Id.* at 8 n.6.)  Defendant argues that "[t]he Court need not accept as true conclusory allegations which are contradicted by documents in the [c]omplaint itself" and that "[Plaintiff]'s allegation that [Defendant] posted such advertisement is, at best, a factual contention lacking evidentiary support after a reasonable inquiry." (*Id.* at 8 & n.6.)

###### 2.    Analysis

"Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services." *Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981).  "'Palming off' or 'passing off' is the selling of a good or service of one's own creation under the name or mark of another.  Passing off may be either 'express' or 'implied.'  Express passing off occurs when an enterprise labels goods or services with a mark identical to that of another enterprise, or otherwise expressly misrepresents that the goods originated with another enterprise.  Implied passing off occurs when an enterprise uses a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product it is selling was produced by the competitor." *Id.* at 604 (citations omitted).

*See also Dastar Corp. v. Twentieth Century Fox Film. Corp.*, 539 U.S. 23, 27 n.1 (2003) ("Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. 'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own.") (cleaned up).

"To establish a claim for false designation of origin under § 1125(a)(1)(A), a plaintiff must show that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Simpson Strong-Tie Co. Inc. v. MiTek Inc.*, 2021 WL 1253803, *4 (N.D. Cal. 2021).

As noted, passing off "occurs when an enterprise uses a . . . photograph of the competitor's product, to impliedly represent that the product it is selling was produced by the competitor." *Smith*, 648 F.2d at 604. The complaint alleges that "Defendant posted an advertisement with a link on ESPN.com encouraging internet users to purchase the 'Keyzmo' product, but the image shown is actually one of Plaintiff's product." (Doc. 1 ¶ 33.) That is, as Plaintiff points out, a textbook allegation of passing off. *See, e.g.*, *Accurate Leather & Novelty Co. v. LTD Commodities Inc.*, 1990 WL 205865, *3 (N.D. Ill. 1990) (use of a photograph of plaintiff's product in a catalog to sell defendant's product actionable as false designation of origin claim under § 43(a)).

It is true, as Defendant emphasizes, that the screenshot included in the complaint appears to be from the website gifts.2022gadgets.com. But the Court does not see how this changes the Rule 12(b)(6) analysis. The complaint explicitly alleges that Defendant posted the challenged advertisement on ESPN.com. (Doc. 1 ¶ 33.) And "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and construed in the light most favorable to the non-moving party." *In re Fitness*, 714 F.3d at 1144-45. Nor is there any inherent inconsistency between Plaintiff's allegation on this point and the appearance of the phrase "gifts.2022gadgets.com" at the bottom of the photograph—it seems possible,

for example, that the photograph initially appeared on the gifts.2022gadgets.com website and Defendant then chose to repost it on ESPN.com. *Cf. Loftis v. Salcedo*, 2019 WL 5075853, *5 n.1 (C.D. Cal. 2019) ("Although the Court may disregard conclusory allegations when they are contradicted by documents referred to in the complaint, this doctrine is only triggered upon a threshold determination of a contradiction, which only exists when the statements are inherently inconsistent.") (cleaned up).  Of course, Plaintiff could have made things easier for the Court and Defendant by providing a reasoned explanation on this point in its response brief, but Plaintiff was not required to do so at this stage of the case and Defendant will have ample opportunities, during future stages of this case, to seek appropriate remedies should its suspicion that there was no ESPN.com advertisement prove correct.  For these reasons, Defendant's motion to dismiss Count Two based on false designation of origin is denied.

V.    Federal Trademark Counterfeiting (Count Three)

Count Three is a claim for trademark counterfeiting under 15 U.S.C. § 1114.  (Doc. 1 at 15.)

A.    **The Parties' Arguments**

Defendant argues that Plaintiff's "trademark counterfeiting claim[] should be dismissed for the same reasons as the trade dress claim."  (Doc. 11 at 15-16.)

In response, Plaintiff argues that "[t]he [c]omplaint adequately alleges all elements for federal trademark counterfeiting based on Plaintiff's registered product configuration marks."  (Doc. 13-1 at 13.)  Specifically, Plaintiff argues that "[t]o state a claim for trademark counterfeiting . . . a plaintiff must establish the same elements as trademark infringement . . . plus that the defendant 'knowingly and intentionally' used the counterfeit mark."  (*Id.*)  Plaintiff also argues that "[n]othing in the Lanham Act or Ninth Circuit precedent limits counterfeiting claims to word marks or logos—registered product configuration trade dress can support a counterfeiting claim."  (*Id.*)  Plaintiff argues that the '395 Trademark and the '893 Trademark "provide prima facie evidence of validity" and that "[t]he [c]omplaint provides detailed factual support showing that Defendant's

product incorporates the claimed elements of Plaintiff's registered marks." (*Id.* at 14.) Plaintiff further argues that the complaint "documents multiple instances of actual consumer confusion." (*Id.*) Finally, Plaintiff argues that the complaint "provides factual support for willfulness" and "also alleges that Defendant continued its infringing activities even after receiving notice of Plaintiff's intellectual property rights." (*Id.* at 15.)

In reply, Defendant attaches the following graphic, which it argues "shows what of [the '395 Trademark] and [the '893 Trademark] was disclaimed [by Plaintiff] as functional":

Logo Claimed — Disclaimed as functional — Outer Dimensions Not Claimed — Disclaimed as functional — Disclaimed as functional — Disclaimed as functional

'395 Registration[7]
(amended drawing)

'893 Registration
(amended drawing)

(Doc. 17 at 9.)  Defendant argues that the graphic "exemplif[ies] the wrongfulness of [Plaintiff]'s counterfeiting claim, which—in view of its disclaimers—distills to the absurd, *i.e.*, a key-shaped tool is a counterfeit." (*Id.* at 10.)  Defendant also argues that "there is still no allegation that [Defendant] included the GEEKEY mark in its competing products or that this case is about anything other than key shapes." (*Id.*)  Defendant contends that "[Plaintiff]'s conclusory allegations regarding likelihood of confusion and 'knowing and intentional use' fail to consider the scope of [Plaintiff]'s functional disclaimer." (*Id.*) Finally, Defendant argues that it "was entitled to compete through imitation.  And it should be undisputed that [Defendant] was entitled to copy what was functional." (*Id.*)

B.    **Analysis**

Under 15 U.S.C. § 1114(a), the holder of a protectable trademark may hold liable any person who, without consent, "use[s] in commerce any reproduction, counterfeit, copy,

or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which is likely to cause confusion. *See also Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1004 (9th Cir. 2023) ("Like trademark infringement claims, trademark counterfeiting requires the plaintiff to show a likelihood of confusion."). "To succeed on a trademark counterfeiting claim, a plaintiff must establish that: (1) the defendant intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offer for sale, or distribution of goods or services; and (4) its use was likely to confuse or deceive." *Evo Brands, LLC v. Performance Plus Mktg., Inc.*, 2022 WL 18231779, *3 (C.D. Cal. 2022).

As the parties acknowledge, "[a] trademark counterfeiting claim requires proof of substantially the same elements as a trademark infringement . . . claim." *N. Face Apparel Corp. v. Dahan*, 2014 WL 12558010, * 11 (C.D. Cal. 2014). *See also Meta Platforms, Inc. v. Arowokoko*, 2023 WL 3035454, *6 (N.D. Cal. 2023) ("Since Chime has established a claim for trademark infringement against Defendants, it has also established valid claims for counterfeiting . . . ."). As detailed in Section III.B, Plaintiff has successfully stated a claim for trademark infringement. Most of Defendant's arguments as to why the complaint fails to state a claim for counterfeiting are reiterations of arguments already rejected above, and thus are rejected again for the same reasons.

Defendant also appears to argue that it would be "absurd" to hold that a "key-shaped tool is a counterfeit." (Doc. 17 at 10.) However, Defendant has failed to cite any case law holding that a key-shaped tool cannot serve as a valid basis for a counterfeiting claim under 15 U.S.C. § 1114. The Lanham Act merely requires "counterfeit . . . of a registered mark," 15 U.S.C. § 1114, and it does not prevent Plaintiff from bringing a counterfeiting claim based on the *registered* and non-disclaimed shape of the Geekey product in the '395 Trademark and the '893 Trademark. *See, e.g., Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 950 (N.D. Ill. 2019) ("[T]he shape of the cookie cutters—an outline of the Peppa Pig character's head—is substantially indistinguishable from the '931 design mark. . . . Accordingly, the Court finds as a matter of law that Defendant's cookie cutters are

counterfeit.); *Nautilus, Inc.*, 2013 WL 12133877 at * 6 ("In this case, the relevant mark is the Dumbbell Configuration mark.  According to the photographs, Defendant's dumbbells are substantially indistinguishable from Plaintiff's Bowflex Selecttech dumbbells, except that they lack the Nautilus logo and Bowflex word mark found on the genuine article.  Their shape is indistinguishable from the Bowflex Selecttech dumbbells' shape, and thus the Dumbbell Configuration mark. . . .  Therefore, because the shape is indistinguishable, [the] dumbbells are counterfeit."); *Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1205 (C.D. Cal. 2012) ("In this case, it appears that Bederoff's copying was deliberate and willful.  The counterfeit products were packaged in bottles with nearly identical trade dress as that of the genuine products, including the size, shape, color, wording, and overall appearance of the products.").  Accordingly, Defendant's motion to dismiss Count Three is denied.

VI.    State-Law Claims (Counts Four And Five)

Both sides argue that Plaintiff's state-law claims for trademark infringement and unfair competition are governed by the same pleading standards as Plaintiff's claims for federal trademark infringement and unfair competition.  (Doc. 11 at 15 [citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 1984 WL 1473, *3 (D. Ariz. 1984), and arguing that "claims of trade dress infringement under the Lanham Act or common law unfair competition require the court to apply the same analysis"]; Doc. 13-1 at 16 ["Because the Complaint adequately states claims under the Lanham Act, it necessarily states claims for common law trademark infringement and unfair competition based on the same factual allegations."]; Doc. 17 at 10 ["[Plaintiff]'s common law claims under Arizona law for trademark infringement, trade dress infringement, and unfair competition are likely to rise and fall with its federal claims."].)

The Court agrees.  "Common law trademark claims are substantially congruent to claims made under the Lanham Act. . . .  Courts thus address Arizona common law trademark claims under the framework of federal law." *AAA Alarm & Sec. Inc. v. A3 Smart Home LP*, 2021 WL 3857417, *2 (D. Ariz. 2021).  *See also 3 Ratones Ciegos v. Mucha*

*Lucha Libre Taco Shop 1 LLC*, 2017 WL 4284570, *2 (D. Ariz. 2017) ("Plaintiff's trademark infringement and unfair competition claims brought under the common law and the Lanham Act, 15 U.S.C §§ 1114 and 1125, can be considered together because they share the same analysis."). Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's state-law claims for trademark infringement (Count Four) and unfair competition (Count Five).

VII.    Leave To Amend

In its response brief, Plaintiff argues that "[i]f any cause of action is dismissed in whole or in part, Plaintiff respectfully requests the court grant leave to amend." (Doc. 13-1 at 16.) Defendant does not oppose this request in its reply brief. (Doc. 17.)

"Rule 15 advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, the Court should grant leave to amend unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

It does not appear to the Court that amendment would be prejudicial, be in bad faith, produce undue delay, or be futile. As such, Plaintiff's amendment request is granted.

…

…

…

…

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that:

1.    Defendant's motion to dismiss (Doc. 11) is **granted in part and denied in part**, as set forth above.

2.    Plaintiff may file a First Amended Complaint ("FAC") within 14 days of the issuance of this order.  Any changes shall be limited to attempting to rectify the deficiencies identified in this order.  Plaintiff shall, consistent with LRCiv 15.1, attach a redlined version of the pleading as an exhibit.

Dated this 29th day of May, 2026.

_____
Dominic W. Lanza
United States District Judge

- 27 -